# IN THE UNITED STATES DISTRICT COURT
## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

| | |
|---|---|
| CHRISTOPHER WILLIAM CHAMBERLIN AND SELENE ELUNA-REY DRACULEA,<br><br>Plaintiffs<br><br>v.<br><br>PATHLIGHT PROPERTY MANAGMENET AND HOME PARTNERS HOLDINGS LLC,<br><br>Defendants | Case No. 0:22-cv-02523-KMM-LIB<br><br><br>**AMENDED COMPLAINT**<br><br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiffs Christopher William Chamberlin and Selene Eluna-Rey Draculea ("Plaintiffs") bring this action under the Titles VIII and IX of the Civil Rights Act of 1968 (Fair Housing Act) and Minnesota state law against Defendants Pathlight Property Management ("Pathlight"), and Home Partners Holdings LLC ("Home Partners"), and demand a trial by jury (collectively, "Defendants").

## <u>NATURE OF ACTION</u>

1.     Plaintiffs bring this action to be compensated for their injuries sustained due to Defendants' actions in violations of the Fair Housing Act and Minnesota state and common law.

1

2.     From March 2021 until the present ("Rental Period"), Plaintiffs have rented two homes from Defendants with rental assistance from Metropolitan Council's Housing and Redevelopment Authority ("Metro HRA").

3.     The first home Plaintiffs rented from Defendants was not in a habitable condition and Plaintiffs' repeated requests for maintenance went ignored by Defendants.

4.     Ultimately through intervention by Metro HRA, Plaintiffs were able to relocate to another home, but maintenance issues still existed. Plaintiffs' requests for repair and maintenance continued to be ignored, and worse yet, Plaintiffs became a target of Defendants' retaliation and harassment.

5.     Plaintiffs both are disabled individuals who require use of service animals in their homes.

6.     Plaintiffs also have five children living with them.

7.     Throughout the Rental Period, Defendants failed to provide habitable housing to Plaintiffs and have discriminated against Plaintiffs based on their disabilities and familial status.

8.     Defendants also illegally took advantage of Plaintiffs' vulnerable position knowing how difficult it is to find housing large and accessible enough to accommodate their children and their disabilities that would also qualify for rental assistance by the government.

9.     Further, Defendants deleted all record of Plaintiffs repeated plea for necessary repairs and maintenance and their status as having disability requiring service

animals and started to harass them by putting restriction on the service animals and charging them fees in violation of the original rental agreement.

10.     Plaintiffs have been and continue to be harmed by these actions by Defendants in violation of the FHA and Minnesota state and common laws and seek to be compensated for their injury among other relief.

## PARTIES

11.     Plaintiffs are residents and citizens of the State of Minnesota.

12.     This matter arises out of acts committed by Defendants against Plaintiffs causing the Plaintiffs to suffer damages recoverable under the Fair Housing Act and Minnesota law.

13.     Defendant Home Partners is a Delaware corporation that maintains its principal address at 120 South Riverside Plaza, Suite 2000, Chicago, Illinois 60606.

14.     Upon information and belief, Defendant Home Partners or one of its subsidiaries owns and rents homes through separately incorporated limited liability companies.

15.     Defendant Pathlight is a California Corporation that maintains its principal address at 6500 International Parkway, Suite 1100, Plano, Texas 75093.

16.     Upon information and belief, Defendant Pathlight is a subsidiary of Defendant Home Partners and is in the business of renting single family housing to prospective tenants.

**JURISDICTION AND VENUE**

17.    This Court has subject matter jurisdiction over this action under the Fair Housing Act.

18.    This Court has personal jurisdiction over Defendants because Defendants transact business within the State of Minnesota and committed one or more tortious acts within the State of Minnesota.

19.    Defendants rent several homes to prospective tenants in the State of Minnesota and discriminated against Plaintiffs in the State of Minnesota.

20.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events that gave rise to the claims in this case occurred in this District.

21.    Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) as Defendants' illegal conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district, because Defendants caused harm to the Plaintiffs who reside in this district, and/or because the Defendants are subject to personal jurisdiction in this district.

**FACTUAL ALLEGATIONS**

22.    Mr. Chamberlin and Ms. Draculea are a married couple who, in addition to their dependent children, have rented residential properties from Defendants since March 2021.

23.    Mr. Chamberlin and Ms. Draculea both are disabled individuals; both suffer from, among other conditions, preexisting neck, back, and spinal cord impact injuries as well as post-traumatic stress disorder.

4

24.     Mr. Chamberlin and Ms. Draculea both have service dogs who assist them with their disabilities.

25.     Mr. Chamberlin and Ms. Draculea receive rental assistance from Metro HRA and were approved to rent a five-bedroom unit to house themselves and their children.

26.     Metro HRA is the largest administrator of the Housing Choice Voucher Program in the state of Minnesota.[1] According to the Metropolitan Council website, the Housing Choice Voucher program partners with private rental market landlords to provide affordable housing opportunities for households in the region.[2] Under this program, the participants pay a portion of their income toward their rent and Metro HRA pays the remainder to the property owner.[3]

27.     Metro HRA partners with Defendants to facilitate rental assistance under the Housing Choice Voucher program and directly provide payment for rental of Pathlight properties on behalf of individuals receiving benefits from Metro HRA. Mr. Chamberlin and Ms. Draculea qualified for this program and per the terms of their rental assistance, Metro HRA pays the majority of rent directly to Pathlight, with Mr. Chamberlin and Ms. Draculea responsible for the remaining small portion of rent.

28.     In December 2020, Mr. Chamberlin and Ms. Draculea applied to rent from Defendants at one of their properties located at 9650 Franlo Road, Eden Prairie, Minnesota

---

[1] https://metrocouncil.org/Housing/Services/Metro-HRA-Rental-Assistance.aspx (last accessed April 27, 2023).
[2] *Id*.
[3] *Id*.

5

55347 ("Franlo Road"), and were approved pending a satisfactory house inspection conducted by Metro HRA in February 2021.

29.     The Lease Agreement includes both Defendants as landlords, listing the Landlord Notice Address as

"HPA Borrower 2018-LLC
120 S. Riverside Plaza, Suite 2000
Chicago, Illinois 60606
Telephone: (887) 234-5155
Email: notice@homepartners.com
FAX: (312) 780-1669

With a copy to:
HPA Borrower 2018-1 LLC
c/o Pathlight Property Management
6500 International Parkway, Suite 1100
Plano, Texas 75093
Attn: Property Manager
Telephone: (800) 527-5030
Email: movein@pathlightmgt.com
FAX: (866) 221-8563"

30.     Mr. Chamberlin and Ms. Draculea applied to live at Franlo Road in part due to the appliances advertised as available and usable in the unit, including a washer unit, dryer unit, and an icemaker.

31.     During the application process, Mr. Chamberlin and Ms. Draculea disclosed their disabilities and approved verification of their disabilities by Metro HRA. Defendants were informed of Mr. Chamberlin's and Ms. Draculea's disabilities and the need for service animals.

32.     On February 11, 2021, Metro HRA conducted an inspection of Franlo Road and failed the property due to habitability issues. Metro HRA informed Mr. Chamberlin and Ms. Draculea that Defendants must fix these issues prior to their move-in.

33.     Metro HRA conducted a second inspection of Franlo Road on March 12, 2021 and approved immediate move-in. Mr. Chamberlin and Ms. Draculea signed a lease, on March 12, 2021. Defendants attempted to coerce Mr. Chamberlin and Ms. Draculea into

signing a pet addendum for rent and fees for their service animal, however Mr. Chamberlin refused. Defendants then informed Mr. Chamberlin and Ms. Draculea that the pet fee and rent would be removed once the agreement was signed.

34.     Mr. Chamberlin, Ms. Draculea, and their family moved into Franlo Road with an agreement to pay prorated rent for March 2021.

35.     Immediately since Plaintiffs moved into Franlo Road, they had to deal with Defendants' harassment and outright refusal to perform their duties as a landlord in various situations.

36.     Upon move-in, Mr. Chamberlin and Ms. Draculea informed Defendants of several issues with the appliances advertised as available at Franlo Road. They informed Defendants that the washer was completely absent, the dryer was sitting in standing water, the icemaker was not set-up for use and, accordingly, they required repairs, replacement, and/or set-up of these appliances. Defendants denied this request, informing Mr. Chamberlin and Ms. Draculea that they would not service the appliances at all and that it was Plaintiffs' responsibility to rectify. Mr. Chamberlin had no choice but to personally purchase and install a new washer and dryer.

37.     Immediately after move-in, Defendants charged Mr. Chamberlin and Ms. Draculea late fees for failure to pay Metro HRA's portion of March rent. Metro HRA resolved this issue and informed Defendants that Mr. Chamberlin and Ms. Draculea should not be assessed late fees on Metro HRA's portion of rent.

38.     On April 12, 2021, Mr. Chamberlin informed Metro HRA that he and Ms. Draculea were still being assessed late fees by Defendants for Metro HRA's portion of

rent. Melissa Montbriand, a coordinator at Metro HRA, informed both Mr. Chamberlin and Defendants that Mr. Chamberlin and Ms. Draculea should not be charged late fees for Metro HRA's portions of rent being delayed.

39.     Soon after moving in to Franlo Road, Mr. Chamberlin and Ms. Draculea noticed several severe habitability issues that persisted throughout their stay, including bat and rodent infestations, severe water damage on ceilings, the presence of mold and fungal growth in portions of the home, dangerous floor conditions throughout the house, rotting deck floorboards, dangerous conditions in the landscaping, a leaking dishwasher unit, and defective locks. Mr. Chamberlin, Ms. Draculea, and their family consistently lived through these conditions, despite Defendants' obligations to resolve them.

40.     Defendants consistently delayed addressing these conditions and failed to resolve several of them prior to Mr. Chamberlin's and Ms. Draculea's eventual move-out. On several occasions, Defendants indicated that repairs were the tenant's responsibility and refused to address the issues.

41.     Defendants further assessed Mr. Chamberlin and Ms. Draculea a pet fee and pet rent fee for their service animals, despite informing them that the fees would be waived upon signing the pet addendum. Defendants further suggested on several occasions that Franlo Roads' maintenance issues were due to Mr. Chamberlin and Ms. Draculea's service animals.

42.     Recognizing that Franlo Road was in disrepair, Mr. Chamberlin and Ms. Draculea requested that Metro HRA inspect the unit again in an attempt to prompt repairs by Defendants.

43.     Metro HRA conducted an inspection of Franlo Road on December 14, 2021. The inspector identified a host of issues with Franlo Road and ordered immediate corrective action to repair the property by February 28, 2022, to comply with Housing Quality Standards.[4] Metro HRA indicated it would not make Housing Assistance Payments until Defendants completed repairs.

44.     Eventually, Mr. Chamberlin and Ms. Draculea determined that the maintenance issues were too severe and negotiated a transition to another property owned by Defendants. Defendants agreed to transition Mr. Chamberlin, Ms. Draculea, and their family to a unit at 10359 Canadians Landing, Eden Prairie, Minnesota 55347 ("Canadians Landing"), with Metro HRA providing rental assistance.

45.     Mr. Chamberlin and Ms. Draculea chose to request a transition to Canadians Landing in part because of the availability of an in-unit washer-dryer unit advertised and showcased during their tour of the house.

46.     Defendants approved transition to Canadians Landing in August 2022, however Mr. Chamberlin, Ms. Draculea, and their family were delayed in moving due to a failed inspection and necessary repairs by September 12, 2022. These issues included, but were not limited to, electrical hazards, interior hazards, and presence of mold. Pathlight assured the family that they could reside at Franlo Road until Canadians Landing was ready for move-in.

---

[4] Under federal statute, properties that receive Housing Assistance Payments must meet these Housing Quality Standards. *See* 24 C.F.R. § 982.401; see also https://www.hud.gov/sites/documents/DOC_9143.PDF (last accessed April 27, 2023).

47.     These maintenance issues were repaired by Defendants and on September 12, 2022, Mr. Chamberlin and Ms. Draculea signed a lease to rent Canadians Landing. As with their lease for Franlo Road, Defendants attempted to coerce Mr. Chamberlin and Ms. Draculea into paying a pet fee and rent for their service animal. Again, after pushback, Defendants agreed to waive the pet fee and service animal if Mr. Chamberlin and Ms. Draculea signed the pet addendum to their lease.

48.     Defendants acknowledged the issues at Franlo Road which were caused by its failure to make the property habitable and agreed to provide moving assistance. Despite being aware of Mr. Chamberlin and Ms. Draculea's disabilities would cost them more for additional help to move, Pathlight only provided $500 in assistance. Mr. Chamberlin and Ms. Draculea incurred approximately $3,500 in out-of-pocket costs involved with moving to Canadians Landing.

49.     On September 27, 2022, after months of negotiating to find a new residence for themselves and their children, Mr. Chamberlin and Ms. Draculea, received assurances from Defendants that they could live at Franlo Road until their new unit was available to move in. That same day, Mr. Chamberlin and Ms. Draculea received a letter from a law firm, Burns & Hanson on behalf of Defendants indicating that they owed "a balance of unpaid rent, fees, and other charges totaling $5,1748.50 [*sic*]" and would initiate an eviction proceeding if the balance was not settled that day.

50.     Burns and Hanson did not provide an accounting for this amount and at no point corrected "5,1748.50" with commas or periods in the correct locations. To the

contrary, Burns and Hanson set another letter the next day, again demanding that Mr. Chamberlin and Ms. Draculea immediately pay "$5,1748.50 [*sic*]."

51.     As far as Mr. Chamberlin and Ms. Draculea knew prior to this letter, their payments for rent on Franlo Road were up to date and there was no indication of an overdue balance. These confusing demands for payment and threats of eviction, especially at a time when Mr. Chamberlin and Ms. Draculea were unsure if or when Defendants would complete the necessary repairs at the Canadians Landing property, caused both of them severe stress, mental anguish, and exacerbated their pre-existing medical and mental health conditions.

52.     Mr. Chamberlin filed a civil suit in Hennepin County District Court, and soon after the "5,1748.50" charge quickly disappeared from Mr. Chamberlin and Ms. Draculea's rent ledger. Neither Burns and Hanson nor Defendants acknowledged the charge or its disappearance.

53.     In moving to Canadians Landing, Defendants required Mr. Chamberlin and Ms. Draculea create a new log-in to its online resident portal for maintenance requests and rental payments. Once Mr. Chamberlin and Ms. Draculea created their new account, Defendants deleted the old account, including all communications, maintenance requests, and the ledger associated with Franlo Road. In addition, Defendants evidently deleted all records of Mr. Chamberlin and Ms. Draculea's disabilities and need for a service animal.

54.     Mr. Chamberlin and Ms. Draculea believe that Defendants required them to create a new portal login and deleted all data and communications on the old login to retaliate against them for, among other actions, drawing attention to the inhabitable

conditions of their residence and requesting inspections from Metro HRA and other agencies to assess whether Defendants' properties met HUD [5] Housing Quality Standards.

55.    Soon after moving in, Mr. Chamberlin and Ms. Draculea noticed maintenance issues at Canadians Landing that have still not been addressed by Defendants. These issues include, but are not limited to, sink and dishwasher leaks, water damage, rotting deck boards, and damage to the roof shakes. Notably, Mr. Chamberlin placed a maintenance request for the damaged roof on October 21, 2022. This damage was not inspected by Defendants until April 2023, and to date has not been repaired.

56.    In addition, Mr. Chamberlin and Ms. Draculea learned that the washer-dryer unit that was advertised when they toured Canadians Landing was not operational. When asked to repair, Defendants indicated that they had no responsibility to repair the washer-dryer and that it was the tenant's responsibility to replace it with a working washer-dryer. Mr. Chamberlin attempted to install the washer and dryer he purchased for use at the Franlo Road residence, but it did not fit where the defunct washer and dryer were housed at Canadians Landing. Mr. Chamberlin then asked if Defendants would remove the defunct washer and dryer, and Defendants replied that it was the tenants' responsibility. As a result, Mr. Chamberlin and Ms. Draculea purchased a replacement washer and dryer – their second replacement purchased for use at Defendants' rental properties – and paid to remove, store, and dispose of the defunct washer and dryer.

---

[5] Housing and Urban Development

57.     Defendants routinely denied Mr. Chamberlin and Ms. Draculea's reasonable accommodation requests for maintenance of the home.

58.     Mr. Chamberlin and Ms. Draculea requested that Defendants perform necessary lawn maintenance services on the yards at both Franlo Road and Canadians Landing. Defendants refused these requests, despite knowing of Mr. Chamberlin and Ms. Draculea's disabilities.

59.     In addition, the particularly snowy winter of 2022-23 severely burdened Mr. Chamberlin and Ms. Draculea, both of whom have back disabilities. Mr. Chamberlin made a reasonable accommodation request for Defendant to provide snow removal services. Defendants did so once and denied subsequent requests.

60.     When pressed by Mr. Chamberlin why Defendants would not provide a reasonable accommodation, Defendants' representatives indicated that they had no record of Mr. Chamberlin or Ms. Draculea's disabilities, that it would be unfair to other tenants to provide additional services, and that in any case it was the family's responsibility to remove snow from the unit. The family was forced to seek snow removal elsewhere and paid for the cost out-of-pocket. At times, Mr. Chamberlin had to shovel snow himself despite his pre-existing back disability.

61.     Defendants claimed they had no record of Mr. Chamberlin and Ms. Draculea's disabilities or their need for a service animal, despite signing a pet addendum to the lease at both Franlo Road and Canadians Landing and having been informed of their disabilities and need for a service animal in the past. Defendants again attempted to charge pet fees and rent for Mr. Chamberlin and Ms. Draculea's service animal.

62.     Mr. Chamberlin and Ms. Draculea believe that Defendants' unwillingness to provide reasonable accommodations or otherwise respond to basic maintenance requests are in retaliation for, among other actions, Mr. Chamberlin drawing attention to the inhabitable conditions at Defendants' properties, requesting reasonable accommodations, and requesting inspections by Metro HRA and other agencies to determine if the properties met HUD Housing Quality Standards.

63.     Mr. Chamberlin and Ms. Draculea have suffered discrimination by Defendants' refusal to acknowledge their disabilities and provide reasonable accommodations and have endured through uninhabitable conditions at both Franlo Road and Canadians Landing.

## COUNT I
### Disability Discrimination in Violation of the Fair Housing Act
### 42 U.S.C.A. § 3604, *et seq.*

64.     Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

65.     Under the Fair Housing Act, ("FHA"), 42 U.S.C.A. § 3604(2), it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . that person; or . . . a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or . . . any person associated with that person.

66.     Such discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to

afford such person equal opportunity to use and enjoy a dwelling[.]" 42 U.S.C.A. § 3604(3)(B).

67.     Plaintiffs are "handicapped" as defined by 42 U.S.C. § 3602(h). Specifically, Mr. Chamberlin and Ms. Draculea suffer from neck, back, and spinal cord impact injuries which substantially limit various of their major life activities. Mr. Chamberlin and Ms. Draculea have a record of their handicaps. Further, Mr. Chamberlin and Ms. Draculea have submitted such records and have been found to each have a handicap by agencies such as the Minnesota Metropolitan Council and the Minnesota Department of Housing and Urban Development.

68.     Defendants and their employees and agents knew or should have known that Plaintiffs were handicapped *inter alia*, through its communications with Plaintiffs and Metro HRA.

69.     Plaintiffs requested reasonable accommodations from Defendants based on their status as handicapped persons. Specifically, Plaintiffs requested that Defendants remove snow and cut the grass at the properties they were leasing, which Plaintiffs were unable to do because of their handicaps.

70.     Additionally, Plaintiffs requested reasonable accommodation to allow them to live with a service animal, which serves in myriad ways to ameliorate the effects of Plaintiffs' handicaps. Despite at one point agreeing to waive any fees for the service animal, Defendants went back on this agreement and continued to harass Plaintiffs by charging unreasonable pet fees and rent forcing Plaintiffs to handle this issue whenever it reemerged. Even now, there is no guarantee that this conduct has ceased.

71.     Defendants had the resources to provide these accommodations, and doing so would not be an undue hardship to Defendants.

72.     In fact, Defendants acknowledged the need for and agreed to provide these accommodations when Plaintiffs were at Franlo Road. But once Plaintiffs were relocated to Canadians Landing, Defendants claimed ignorance on the existence of Plaintiffs' disabilities or the agreement to provide the reasonable accommodations.

73.     Because Defendants refused to provide these reasonable accommodations, Plaintiffs were unable to effectively use, enjoy, and reside in their dwelling.

74.     As a result of Defendants' violations, Plaintiffs have suffered and will continue to suffer damages for which Defendants are liable, in an amount to be established at trial.

## COUNT II
### Retaliation in Violation of the Fair Housing Act
### 42 U.S.C.A. § 3617

75.     Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

76.     Under the FHA, 42 U.S.C.A. § 3617, "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by" the Fair Housing Act.

77.     Plaintiffs, both having disabilities and also having children under the age of 18, are within the protected class under the FHA.

78.     Plaintiffs engaged in protected activity under the FHA, such as submitting complaints on the condition of his house to their HRA provider, submitting complaints about the condition of their house to the Department of Housing and Urban Development, and requesting special Housing Quality Standards inspections.

79.     Defendants were aware that Plaintiffs were taking these actions through direct and indirect communications with Plaintiffs and other government agencies such as HUD.

80.     Defendants retaliated against Plaintiffs by, *inter alia*, delaying and refusing to provide maintenance to Plaintiffs' residence, refusing to provide reasonable accommodations requested by Plaintiffs, sending Plaintiffs frequent harassing payment demands, ordering debt collection notices be sent to Plaintiffs, threatening to evict Plaintiffs and their family, and causing Plaintiffs' residence to be uninhabitable.

81.     The timing and content of Defendants' communications with Plaintiffs, among other indicia, demonstrate that their injurious actions were taken in retaliation for Plaintiffs' engaging in activity protected by the FHA.

82.      As a result, Plaintiffs have suffered and will continue to suffer damages for which Defendants are liable, in an amount to be established at trial.

## COUNT III
**Unfair and Discriminatory Practices in Violation of
the Minnesota Human Rights Act
Minn. Stat. § 363A.09, *et seq.***

83.     Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

84.     Under the Minnesota Human Rights Act, ("MHRA") Minn. Stat. § 363A.09, "[i]t is unfair discriminatory practice for an owner . . . or other person having the right to sell, rent or lease any real property, or any agent of these . . . to discriminate against any person or group of persons because of race, color, creed, religion national origin, sex, marital status, status with regard to public assistance, disability, sexual orientation, or familial status in the terms, conditions or privileges of the sale, rental or lease of any real property or in the furnishing of facilities or services in connection therewith[.]"

85.     "Disability discrimination" under the Minnesota Human Rights Act includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling[.]" Minn. Stat. § 363A.10, subd. 1(2).

86.     Plaintiffs are "disabled" as defined by Minn. Stat. § 363A.03, subd. 12. Specifically, Mr. Chamberlin and Ms. Draculea suffer from neck, back, and spinal cord impact injuries which substantially limit various of their major life activities. Mr. Chamberlin and Ms. Draculea have a record of their disabilities. Further, Mr. Chamberlin and Ms. Draculea have submitted such records and have been found to have a disability by agencies such as the Minnesota Metropolitan Council and the Minnesota Department of Housing and Urban Development.

87.     Defendants and their employees and agents knew or should have known that Plaintiffs were disabled, *inter alia*, through its communications with Plaintiffs and Metro HRA and documents submitted for the rental property.

18

88.    Plaintiffs requested reasonable accommodations from Defendants based on their status as disabled persons. Specifically, Plaintiffs requested that Defendants remove snow and cut the grass at the properties they were leasing, which Plaintiffs were unable to do because of their disabilities.

89.    Additionally, Plaintiffs requested reasonable accommodation to allow them to live with a service animal, which serves in myriad ways to ameliorate the effects of Plaintiffs' disabilities.

90.    Defendants had the resources to provide these accommodations, and doing so would not be an undue hardship for Defendants.

91.    However, Defendants refused to provide these reasonable accommodations, and as a result, Plaintiffs were unable to effectively use, enjoy, and reside in their dwelling.

92.    Also, under the plain language of the MHRA, Plaintiffs are within the protected class due to their familial status of having children under the age of 18 and having been pregnant with a child during relevant times pursuant to Minn. Stat. § 363A.03, subd. 18 (1).

93.    Plaintiffs have multiple children under the age of 18 and at the time of residence at Franlo Road, Ms. Draculea was pregnant with their youngest child.

94.    Defendants knew or should have known that Plaintiffs' familial status required the requested maintenance to be done to create a safe environment for their children. Defendants knew or should have known that because of the Plaintiffs' disabilities and the number of children, relocation is not easy, and that Plaintiffs would not be able to

find many other rental properties large enough or accessible enough that would also qualify for subsidization by Metro HRA.

95.     Defendants refused to provide the necessary repairs and maintenance of the property and its appliances until Metro HRA intervened and deemed the property uninhabitable.

96.     As a result of Defendants' violations, Plaintiffs have suffered and will continue to suffer damages for which Defendants are liable, in an amount to be established at trial.

## COUNT IV

### Reprisal in Violation of the Minnesota Human Rights Act
### Minn. Stat. § 363A.15

97.     Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

98.     Under Minn. Stat. § 363A.15, "[i]t is unfair discriminatory practice for any individual who participated in the alleged discrimination as a perpetrator . . . or owner, lessor, lessee, sublessee, assignee or managing agent of any real property . . . to intentionally engage in any reprisal against any person because that person . . . opposed a practice forbidden under this chapter or has filed a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter[.]" Reprisals include "any form of intimidation, retaliation, or harassment."

99.     Plaintiffs opposed practices forbidden under this chapter, such as Defendants' failure to make reasonable accommodations and to maintain Plaintiffs' residence in a habitable condition.

100.   Plaintiffs have acted in opposition to these practices in ways such as submitting complaints on the condition of their residence to Metro HRA submitting complaints about the condition of their residence to the Department of Housing and Urban Development, and requesting special Housing Quality Standards inspections.

101.   Defendants were aware that Plaintiffs were taking these actions through direct and indirect communications with Plaintiffs and other government agencies such as Metro HRA.

102.   Defendants engaged in a reprisal against Plaintiffs by, *inter alia*, delaying and refusing to provide maintenance to Plaintiffs' residence, refusing to provide reasonable accommodations requested by Plaintiffs, sending Plaintiffs frequent harassing payment demands, causing Plaintiff to be sent debt collection notices, threatening to evict Plaintiffs and their family, and causing Plaintiffs' residence to be uninhabitable.

103.   The timing and content of Defendants' communications with Plaintiffs, among other indicia, demonstrate that their injurious actions were taken in retaliation for Plaintiffs' opposition to Defendants' violations of the MHRA.

104.   As a result, Plaintiffs have suffered and will continue to suffer damages for which Defendants are liable, in an amount to be established at trial.

### COUNT V
**Breach of Contract**

105.   Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

106.   As set forth above, Plaintiffs and Defendants both agreed to be bound by the terms and conditions of the lease agreement.

107.    Plaintiffs substantially performed their obligations under the terms and conditions by paying monthly rent.

108.    However, Defendants have breached its obligations under the lease agreement, including but not limited to refusing to provide the appliances in working condition as advertised, or timely or effective maintenance and repairs on Plaintiffs' residence.

109.    Plaintiffs have sustained damages as a direct and proximate result of Defendants' breach of contract in an amount to be determined at trial.

<u>COUNT VI</u>
**Breach of Covenant of Habitability**

110.    Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

111.    Minn. Stat. § 504B.161, subd. 1(a) states "In every lease or license of residential premises, the landlord or licensor covenants: (1) that the premises and all common areas are fit for the use intended by the parties; (2) to keep the premises in reasonable repair during the term of the lease or license, except when the disrepair has been caused by the willful, malicious, or irresponsible conduct of the tenant or licensee or a person under the direction or control of the tenant or licensee; . . . (4) to maintain the premises in compliance with the applicable health and safety laws of the state, and of the local units of government where the premises are located during the term of the lease or license, except when violation of the health and safety laws has been caused by the willful, malicious, or irresponsible conduct of the tenant or licensee or a person under the direction or control of the tenant or licensee."

112.    Under Minn. Stat. § 504B.161, subd. 1(b), "[t]he parties to the lease of residential premises may not waive or modify the covenants imposed by this section."

113.    Defendants' conduct described in the foregoing paragraphs constitutes multiple independent violations of the Covenants of Habitability. Defendants failed to provide the rental property with functioning appliances as communicated to Plaintiffs. Defendants caused Plaintiffs to pay for the cost to replace the appliances which should have been repaired or replaced by Defendants. Defendants failed to provide reasonable repairs to Plaintiffs' residences and to maintain the premises in compliance with the applicable federal, state, and local health and safety laws.

114.    As a result, Plaintiffs have suffered and will continue to suffer damages for which Defendants are liable, in an amount to be established at trial.

<u>**COUNT VII**</u>
**Breach of Duty of Good Faith and Fair Dealing**

115.    Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

116.    Defendants' lease agreements with Plaintiffs contain a contractual duty of good faith and fair dealing that includes maintaining Plaintiffs' residence in accordance with the Covenants of Habitability as well as providing reasonable accommodations in accordance with Federal and State antidiscrimination laws.

117.    Additionally, Defendants have a duty to Plaintiffs that includes timely responding to maintenance requests and providing necessary maintenance and repairs required for Plaintiffs' full use and enjoyment of their residences.

118.    Defendants have breached this duty by refusing to maintain Plaintiffs' residences in accordance with the Covenants of Habitability, refusing to timely respond to maintenance requests or provide necessary maintenance and repairs to Plaintiffs' residences and refusing to provide reasonable accommodations to Plaintiffs.

119.    Defendants have acted in bad faith in their refusal to perform their duties, and requiring Plaintiffs, whom Defendants are aware are disabled, to seek assistance with any and all maintenance of their residences.

120.    Plaintiffs have not impeded Defendants from performing their obligations under the lease agreement.

121.    As a result, Plaintiffs have suffered and will continue to suffer damages for which Defendants are liable, in an amount to be established at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request relief and judgment against Defendants as follows:

a.  Judgment against Defendants for the causes of action alleged against it;

b.  Damages in an amount to be proven at trial;

c.  Injunctive relief ordering immediate repair of the uninhabitable conditions at 10359 Canadians Landing, Eden Prairie, Minnesota 55347;

d.  An award of reasonable attorneys' fees and costs;

e.  Any other such relief in law or equity as the Court deems just and proper.

## DESIGNATION AND DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all claims so triable.

Dated: May 1, 2023

Respectfully submitted,

s/ Daniel C. Hedlund
Daniel C.  Hedlund (#258337)
Catherine K. Smith (#353723)
Anthony J. Stauber (#0401093)
Shashi K. Gowda (#0401809)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dhedlund@gustafsongluek.com
csmith@gustafsongluek.com
tstauber@gustafsongluek.com
sgowda@gustafsongluek.com

***Attorneys for Plaintiffs***